I don't know, Your Honor, whether it was raised or not, and I neglected to tell the court that in my last footnote somehow the word not got in there, and I should have been saying that Ma is controlling, and somehow it said not controlling, and I apologize for that. I don't recall, Your Honor, whether, no, I may be even more confused, because my impression, and perhaps it was the not problem, my impression of that last footnote and the position coming into today was that if we get to that issue because the board didn't speak to it, we should remand under Ventura, which position I understand takes all the time, and now you seem to be addressing the merits of it to suggest that what you're really asking us to do is we don't need to deal with the adverse credibility determination. We can turn him down based on the fact that we don't have a spouse relationship here, which is exactly what I thought you were telling us not to address, so that should go back to the board under Ventura. So again, my apologies. If the court wants to remand the case to let the board address that issue, I don't have a problem with that. I want to know what you're asking for. Yes. Well, I would submit that my is the determinative of the case, but beyond that, if you wish, we can get back to the credibility thing. That was not a finding that stopped the immigration judge, was it? No, it did not. He did not address that. He did not address it, and the board did not address it, de facto having adopted. Yes. It was a streamlined. Streamlined decision, so isn't this one of these things of you basically take the warts of the IJ's decision as you find them, and the board adopted this, and if there's no challenge against it, why would it be appropriate for us to remand? It would be like a second bite at the apple. Well, but for the government, you mean? Yes. And because it wasn't covered, it passes? If the shoe was on the other foot, and they had an issue they thought was dispositive in their favor, and they didn't raise it before the board, you would quite appropriately argue to this court that the issue's been waived. They don't get a second bite at the apple. I guess that's the sense of Judge McKee's question. It's certainly something that could be fixed at the IJ level, had it been brought to the attention of the board, because they could have said, well, there's a jurisdiction issue, we can send it back, we don't have any findings, but we have no record of that anywhere, so it seems to me... Well, I must in candor tell you that... I mean, it might be a good argument... It was either raised or suggested by the petitioner at the hearing. They did file a pre-hearing brief of sorts. They didn't raise it well enough, but they did mention it. Well, I don't think they would be trying to find their way out of a marriage. They were trying to say that MA covered it, or CYZ covered it, when it obviously didn't. Your position that the worst case scenario from the government's point of view, because this issue wasn't addressed, if we disagree on the credibility, that it ought to go back to the board to look at MA in the first instance, and that's the sense of Ventura. Yes. Of my embarrassingly 36-foot note. You want to talk about ACD, adverse credibility determination? Well, I would just point out... The law is he's supposed to say that IJ, he or she, is supposed to identify specifically what it was about demeanor and how it ties to the heart of the claim. Was that done here? Not wholly. He dealt, I guess you could say, in more conclusions by saying words like puzzle, confused, hesitant, faulty, et cetera. Now on page 28 and 29 of our brief, I won't belabor it again, but I went into the record and I found numerous instances that I say support those conclusions, and I pointed them out. The most significant one, I believe, or in my estimation, would be when he refused or was unable to answer where in the world did this claim of being wanted for kidnapping and robbery ever come from, and the judge could not get him to answer that question, and that's the most demonstrable one that I could find, and like I said, many others that are listed there with the citations. The question, Mr. Guzion, is that obviously as a good lawyer, you can see some holes in this story. Yes. I see some holes in this story, frankly, but the question is, isn't it incumbent upon the immigration judge to say, he's going to say, he's puzzled. That doesn't help us, but say, he's puzzled, he doesn't seem to be able to explain where the robbery incident came from, or he was totally confused about his dates, and we don't know. Yes. It's like he's totally confused, period. So we have nothing to link the alleged immunity to this. I understand, and I'm not... And I know you're trying to... I'm not arguing with that. Do your best. If he didn't do it, he didn't do it, and that's the record. So maybe you're agreeing that we should, at least on the credibility, to conclude that through no fault of your own, that I.J. here just didn't tie it up as required under the law. I would say, for the most part, that's the case, but I also... Appreciate your candor. I tried to find for the court the examples he was referring to, and I think I found them. Some are better than others. Can you also distinguish, I mean, there are different kinds of evaluations of credibility based on observation. Some of them go to the substance of what's said, and that you can find, and did find, going through the transcript. And then there are other things that won't be reflected in the transcript at all. One of the problems that an appellate panel always has with demeanor evaluations is demeanor includes a lot of non-verbal things that are transcribed. Now what is the obligation of an I.J. with regard to those non-substantive things, where it isn't a matter of not being able to recall dates or explain the circumstances of a robbery or the examples of Judge McKeown, but it's just that you start twitching in a certain way, or the kind of things that human beings think that you can tell by looking at somebody. What is the I.J. supposed to do to make a record about the basis for those things? To make a better record, he should have done what Judge McKeown specified or articulated. He should have linked it up in some manner so that you would know. And that's what's missing, for the most part. The consequence of this, in your view, would be a grant of the petition or a remand? A remand, Your Honor, I would think. If I could just have a half minute. Sure. There's one other, I tried to point out in the briefs, I won't repeat the things that, whether the Immigration Judge relied on it or not, didn't make sense, or didn't add up, or there were indications, sore thumbs, shall we say, that indicate whether or not someone is making something up, or exaggerating something, or telling the truth that every trial judge looks for in hearing a witness. And the one thing that the judge did articulate was that, this abortion certificate. And the country report carefully always points out that in these documents coming out of Fujian in southern China, there's a tremendous amount, they're very questionable. And their investigations at the consular level have confirmed that problem. And there is no abortion certificate. And it's funny that the consulates on the ground, on the scene, can't find them. And yet we see them time after time in asylum claims before this court. The only certificate the consulate is aware of is one that is more or less perhaps like the one in this record and in other records, which is given when the abortion is voluntary so that the woman can demand two weeks of leave. There is no known certificate for an involuntary abortion. Thank you. You have a little over a minute, although there's nothing that requires you to use that minute and a half. It looks like we may have a settlement. And I wouldn't object to the government suggesting that the court remand this case to the BIA or to the, for further development of the record. But one thing that I would ask the court to address is that the IGA, in this case, is not a fair-minded and neutral fact finder. And I raised in my brief that at the very beginning of my client's testimony that he and his girlfriend was forced to have a late-term abortion, the IGA just jumped at him and said, Sir, it's very hard for me to believe your story. I think the hostile attitude, it could be the bad IGA. That might have something to do with my client's petitioner's confusion because he was disconcerted by the IGA's attitude toward him. Did your client request that relief? No, Your Honor. But this is a constitutional... This is something that just occurred to you now? No, I raised it in my brief, Your Honor. But it's a constitutional issue and the petitioner can raise a constitutional issue for the first time with this court. And the BIA lacks jurisdiction to review a constitutional issue. We understand that. You're out of time. Thank both counsels for their arguments. The case to start will be submitted for decision.
judges: Hawkins, McKeown, Clifton